C. & A. R. R. Co. v. Redmond.

# Chicago & Alton Railroad Co. v. James Redmond, by his Next Friend.

1. PLEADING—*Evidence of Negligence Need Not Be Stated.*—It is not necessary to particularize the special acts of carelessness that cause an accident, or, in other words, to plead the evidence.

2. NEGLIGENCE—*Reliance Upon a Custom of a Railroad Company is Not.*—A person who is familiar with the custom of a railroad company to close gates maintained at a railroad crossing when a train is about to pass, and with the location and surroundings, has a right to rely upon the open gates as a notice to him that no train is close at hand, and as an invitation to him to make the crossing in safety, so far as an approaching train is concerned.

3. VERDICTS—*When Conclusive.*—Whether a plaintiff suing for personal injuries caused by the negligence of the defendant exercised due care for his own safety is a question for the jury; and where it is a question upon which ordinarily intelligent men may reasonably differ, and there is evidence enough to leave the question one of considerable uncertainty, a court of appeal has no right to override the finding of the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed May 6, 1897.

WILLIAM BROWN, General Solicitor, and M. J. SCRAFFORD, Ass't General Solicitor, attorneys for appellant; T. J. SCO-FIELD, of counsel.

The first count alleges generally that the defendant, by its servants, operated said train of cars so carelessly and improperly that the accident occurred which resulted in the injury to the plaintiff. It would seem that this count is insufficient, in failing to particularize the special act of carelessness which caused the accident, on principle and under the opinion in Chicago, B. & Q. R. R. Co. v. Harwood, 90 Ill. 425.

It is the plain duty of every one who attempts to pass over a railroad crossing, either in a city or village, to observe the usual and proper precautions of looking in either direc-

tion and watching and listening for signals of danger before attempting to cross; and where it appears, either from direct testimony or from facts and circumstances in evidence, that a party is injured from want of these usual and prudent precautions, the law can afford no redress, however fearful the injury. Chicago, B. & Q. R. R. Co. v. Van Patten, Adm'x, etc., 64 Ill. 510; St. Louis, A. & T. H. R. R. Co. v. Manly, 58 Ill. 300.

In Lake Shore & M. S. Ry. Co. v. Hart, 87 Ill. 529, our Supreme Court has time and again decided that it was the duty of every person about to cross a railroad track to approach cautiously and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take all proper precaution to avoid accident in so doing, otherwise they could not recover for injury thereby received. See Chicago & N. W. Ry. Co. v. Sweeney, 52 Ill. 325; Chicago, B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; Illinois Central R. R. Co. v. Godfrey, 71 Ill. 500; Illinois Central R. R. Co. v. Hall, 72 Ill. 222; Chicago, B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; Illinois Central R. R. Co. v. Hetherington, 83 Ill. 510; Lake Shore & M. S. R. R. Co. v. Miller, 25 Mich. 274; Harlan v. St. L., K. & N. R. R. Co., 64 Mo. 480; Fletcher v. The Atlantic & Pacific R. R. Co., 64 Mo. 484; Gorton v. The Erie Ry. Co., 45 N. Y. 662; Wharton on Negligence, Sec. 384; Chicago & N. W. Ry. Co. v. Dunleavey, 129 Ill. 132.

WING, CHADBOURNE & LEACH, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The facts in the case are simple, and, except in minor particulars, are not in dispute.

The appellee was, when injured, sixteen years old. His home was in a little village named Hastings, a mile or so south of the village of Lemont, and on the Sunday morning in question he had come into Lemont to attend church.

After church he went with some companions to or near the corner of Stephens and Canal streets in Lemont, about one hundred feet north of the crossing of Stephens street by the tracks of the appellant. While standing there a beer wagon approached on Stephens street from the north, going on a trot toward the south in the direction of Hastings. Some of the boys called out to the driver if he were going to Hastings, and receiving an affirmative answer, but with no checking of the speed of the team, the appellee, and at least one other boy, started to get aboard the wagon, the speed of which was not diminished to accommodate them. The other boy succeeded in getting well aboard and up to the driver's seat. The wagon was rigged with stakes and chains, without solid sides or ends, and is spoken of as a "stake beer wagon." Appellee caught hold of stakes at the tail of the wagon, and had got so far aboard as to be standing upright on the wagon bottom and to have one or both his legs over the chain that extended from stake to stake; before the wagon had got across the railroad tracks, and while in that position a passenger train of the appellant coming from the west, and variously called the "Hummer," the "Flyer," and the "Limited," struck the hind part of the wagon, and threw appellee a distance of from sixty to seventy-five feet, causing him the very serious injuries for which he recovered the judgment of $2,400 that is appealed from.

The declaration contained five counts, three of which charged appellant with negligence in failing to conform to the provisions of certain ordinances of the village of Lemont, but no evidence to support them was offered, and no reliance upon them is claimed by appellee.

The two remaining counts, first and second, alone, are relied upon to sustain the recovery. The first count charged the appellant with negligence generally in the operation of said train, and averred due care and diligence on the part of appellee, and in form and substance was clearly within the rule stated by this court in Chicago City Ry. Co. v. Jennings, 57 Ill. App. 376, affirmed in 157 Ill. 274.

It was not necessary to particularize the special act of carelessness that caused the accident, or, in other words, to plead the evidence. The negligence averred in the second count lay in the failure to ring the bell, or sound the whistle of the locomotive, at the distance of eighty rods from the crossing of the highway.

The appellant had placed and maintained gates on both sides of the railroad at the crossing, which the evidence tended to show was at times a busy one, but on the day in question such gates were not being operated or attended, and were in a position to indicate to anybody needing to, pass that way that the crossing was open and safe against approaching trains. Appellant also kept a gateman there who operated the gates, when they were operated, by means of a cord or wire, but he was at the time of the accident about one hundred and fifty feet away from the crossing.

The driver of the wagon testified that he passed over the crossing every Sunday morning, and had before that time been stopped there by the gates being down when a train would be approaching. On this occasion, it is conceded the gates were up and unattended, and that there was no local indication or warning that the train was coming.

The testimony of one of appellant's witnesses, who was the first person to reach appellee, that he saw the flagman (gateman ?) leave his house and go toward the crossing before the accident, and that when he, the witness, got to the crossing the flagman was there, tends in some degree, although perhaps but slightly, to show that the gates were intended to be and would have been shut before the train arrived if the gateman had not been negligent and too slow in his duty.

The fact that it was on Sunday and that the business of the town was not active, can make no difference. There was evidence that the gates were operated on Sundays as on other days. Negligence or no negligence, at the time and under all the circumstances, was the question.

It is argued, however, in behalf of appellant, that although the appellant had prior to that morning operated the gates

at the crossing, it was, so far as shown by this record, purely a voluntary and gratuitous act, and not done in the discharge of any duty that appellant owed to the appellee under any ordinance or law; and that appellee had no right to presume that such operation would continue, but that appellant had a perfect right to suspend operation of the gates at any time it saw fit.

We can not concede that although the gates were not maintained by requirement of ordinance or law, but were established voluntarily and gratuitously by the appellant, the appellant might arbitrarily without any attempt at notice to the public, and while leaving them in position indicating their purpose, suddenly suspend their operation and be exempt from negligence because of them, when by their long use it had come to be known and understood by the appellee and the public generally that the gates, by their manner of operation, were a warning and safeguard to persons needing to go over the crossing.

The gates having been previously operated by a gateman, "for some years," as one witness testified, and having been there "for a couple of years or so," as said by another witness, and it not being denied that the gates were usually operated in the customary way, we regard it as being no more than expressive of a reasonable legal presumption to say that appellee, whose familiarity with the custom, location and surroundings is not questioned, had a right to rely upon the open gates as a notice to him that no train was close at hand, and as an invitation to him to make the crossing in safety, so far as an approaching train was concerned.

The negative of the other question, of whether the appellee was exercising due care and diligence for his own safety, is pressed with much force. That the appellee had the right to go over the crossing upon the beer wagon, or in any other reasonably prudent and cautious manner, is of course conceded. But it is said that he owed a duty to look out, and that if he had done so he would have seen the approaching train in abundant time to have avoided it. It

certainly was his duty to use every reasonable precaution, such as an ordinarily prudent person would employ before crossing the tracks at all, and that, too, whether the open gates invited him to come on or not.  The question is, what would an ordinarily prudent person do under all the conditions and circumstances surrounding the appellee, including the circumstance that the gates were open, and the further circumstance, testified to by several witnesses, that the sound of no whistle or bell was heard by persons near to the place of the accident, and considering also the speed at which the train was moving across the highway?

One of the effects of the injury received by the appellee has been to deprive him of all recollection of the accident, and we are deprived of any testimony by him as to what he saw, heard or did.  It is plain enough, from the testimony of others, what he did, and as to whether his conduct under the proved circumstances amounted to due care for his own safety became a question of fact for the jury, which they were better able to determine than we are, and it being a question about which ordinarily intelligent men, having a duty cast upon them, might reasonably differ upon, and there being evidence enough to leave the question one of considerable uncertainty, we have not the right to override the finding of the tribunal to whom the law has entrusted the determination of such matters.  C. & N. W. Ry. Co. v. Hansen, No. 6844, last term.

There was no material error in the giving or refusing of instructions.

We observe no necessity for the discussion of anything else in the record, and the judgment will be affirmed.