## Nellie Carlin, Administratrix, Appellee, v. Grand Trunk Western Railway Company, Appellant.

### Gen. No. 14,570.

1. NEGLIGENCE—*failure to lower gates.* Held, under the evidence, that the defendant company was guilty of negligence in failing to lower its crossing gates.

2. INSTRUCTIONS—*what appropriate, what not, upon question of negligence.* Negligence is a question of fact; it is for the court to define negligence and for the jury to say whether certain facts do or do not constitute and amount to negligence. *Held,* in this case, that it was not error to refuse to give the following instruction:

"The court instructs the jury that every person is bound to know that a railroad crossing is a dangerous place, and he is guilty of negligence unless he approached it as if it were dangerous. And if the jury believe from the evidence that the safety gates at the crossing in question were down, and the deceased went upon the tracks underneath the gates, and in so doing failed to exercise due care for his personal safety, and in consequence thereof was struck by an engine and killed, then his administrator cannot recover in this action, and your verdict should find the defendant not guilty."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed June 28, 1909.

KRETZINGER, GALLAGHER & ROONEY, for appellant.

A. L. GETTYS and F. V. CAMPE, for appellee; WILLIAM PRENTISS and R. J. FINN, of counsel.

Mr. Justice Baker delivered the opinion of the court.

Appellee as administratrix of the estate of Hanz P. Schmidt, deceased, brought an action against appellant in the Circuit Court, to recover damages for the wrongful killing of her intestate by a passenger train of defendant as he was attempting to cross defendant's railroad at a street crossing in the city of Chicago.

The first count of the original declaration alleges negligence generally in the operation of the train, and the second, negligence in failing to lower the street crossing gates. The seventh count of the amended declaration alleges that many people were accustomed to pass over said crossing, and that the defendant negligently and carelessly operated its engine along and upon said tracks at an unsafe rate of speed, and without any reasonable control over the same.

It appears from the bill of exceptions that during the trial the plaintiff offered in evidence section 1749 of the ordinances of the city of Chicago, and the defendant objected on the ground that said section had not been pleaded; that plaintiff's counsel then asked leave to amend the declaration, and the trial judge said, "I will give leave to amend." Plaintiff's counsel then, without further objection or exception on the part of defendant, introduced and read in evidence said section, which is as follows:

"1749.  Regulation of Speed.  It shall be unlawful for any person, firm, company, or corporation, its agents, servants or employes, to operate or run within the limits of the city of Chicago, trains, engines, or cars, at any speed greater than the rates herein named, to-wit:  Passenger trains and light or disconnected engines in the first district, twenty miles per hour; in the second district, twenty-five miles per hour; and in the third district, thirty miles per hour."

The clerk's record shows that plaintiff, after judgment, took leave to file an additional count *nunc pro tunc,* as of the day of the trial, but did not at any time,

Carlin v. Grand Trunk Western Railway Co., 150 Ill. App. 121.

either during or after the trial, file such count or any amendment to the declaration.

The contentions of appellant here, as stated in the brief are: "that the weight of the evidence does not sustain the verdict either of negligence on the part of the appellant, or of due care on the part of the deceased; and that the court erred in refusing to give certain instructions asked by appellant."

Loomis street, a north and south street, is crossed by four railroad tracks. The two northerly tracks belong to another company, and the two southerly tracks to the defendant. The defendant maintained and operated gates on each side of said four tracks, which were operated by a man in a tower fifteen feet high, situated in the space between said two sets of tracks. The accident occurred about nine o'clock at night. The deceased came from the north on the west side of Loomis street, and when he reached defendant's south track, was struck and killed by the engine of the eastbound passenger train of the defendant. Three witnesses called by the plaintiff testified that the gates were not lowered until after the deceased had passed by the north gate. For the defendant Mr. Schneider testified that the north gate was down when deceased reached it, and that he passed under it. His wife also testified that the gates were down and that she saw deceased pass under the north gate. Gallagher, the tower man, testified for defendant that when he first saw deceased he was on the west sidewalk between the tracks of defendant and the tracks of the other company; that the gates were then down; that he first saw the eastbound train when it was at Ashland avenue, two blocks west of Loomis street; that he then let down his gates. On cross-examination he testified that he saw the train before he saw deceased; that he saw deceased "when I was putting down my gates." It does not appear from Gallagher's testimony that the gates were lowered before deceased passed the north gate. On the contrary, his testimony that deceased

was between the two sets of tracks when he first saw him, and that he saw him when he was putting down his gates, tends rather to show that deceased had passed by the north gate before the gates were lowered. We think that from the evidence the jury might properly find that the gates were not lowered until after deceased had passed by the north gate.

McCarthy, a witness called by plaintiff, testified that the speed of the train was sixty miles per hour, Sulaski that it was fifty miles per hour. For the defendant, Gallagher testified that the speed of the train was twelve to fifteen miles per hour, Schneider, that it was ten miles per hour, and Downer, the fireman, that it was from fifteen to eighteen miles per hour. Schneider also testified that he heard the whistle of the engine when the train was a mile west of Loomis street. We think that from the evidence the jury might properly find that the defendant was guilty of negligence in failing to lower its gates before the train reached Ashland avenue and before the deceased passed by the north gate. The deceased was in the habit of passing over said crossing daily. He had, we think, as was said in C. & A. R. R. v. Redmond, 70 Ill. App. 119, 123, "a right to rely upon the open gate as a notice to him that no train was close at hand, and as an invitation to him to make the crossing in safety, so far as an approaching train was concerned."

There is evidence tending to show that a train passed out (west) a short time before the eastbound train reached Loomis street. Gallagher was asked in chief what attracted his attention to the eastbound train that night, if anything, and answered, "Well, the other one was after going out." We cannot know what deceased saw or heard as he approached defendant's tracks. The jury have found that he was in the exercise of due care for his own safety. We think that from the evidence in this record the jury might properly find both that the defendant was guilty of negligence which was the direct and proximate cause of

the death of plaintiff's intestate, and that plaintiff's intestate was in the exercise of due care for his own safety.

The error alleged as to instruction is the refusal of the court to give for the defendant the following instruction:

"2.   The court instructs the jury that every person is bound to know that a railroad crossing is a dangerous place, and he is guilty of negligence unless he approaches it as if it were dangerous.   And if the jury believe from the evidence that the safety gates at the crossing in question were down, and the deceased went upon the tracks underneath the gates, and in so doing failed to exercise due care for his personal safety, and in consequence thereof was struck by an engine and killed, then his administrator cannot recover in this action, and your verdict should find the defendant not guilty."

Negligence is a question of fact.   It is for the court to define negligence, but for the jury to say whether certain facts do or do not constitute and amount to negligence.   The jury were told in the 9th instruction that "if deceased was guilty of negligence in going upon the crossing at the time of the accident, then there can be no recovery in this case," and the same rule was stated in substance in the first and second instructions given for the defendant.   In our opinion the court did not err in refusing to give to the jury the first part of said second refused instruction, and the substance of the remainder of said instruction is contained in other instructions given for the defendant.

The record is, we think, free from reversible error, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*